J-A09023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY TURNER-SMITH | : | |
| | : | |
| Appellant | : | No. 2193 EDA 2020 |

Appeal from the Judgment of Sentence Entered June 8, 2020
In the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0000104-2019

BEFORE:   NICHOLS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                    **FILED AUGUST 9, 2022**

Anthony Turner-Smith ("Turner-Smith")  appeals from the judgment of sentence following his convictions for persons not to possess firearms, possession of firearm with altered manufacturer's number, and firearms not to be carried without a license.[1]  We affirm.

On January 2, 2019, homeowners in Parkesburg called police to report an unfamiliar Mercedes parked in their driveway, and provided the car's license plate number.   Detective Ryan Murtaugh, who received the call, recognized the vehicle's description and license plate number from Turner-Smith's social media posts, including a SnapChat video, and he knew that Turner-Smith had an outstanding warrant for his arrest.  Detective Murtaugh arrived at the scene with other officers.  They approached the car, which had

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 6105, 6110.2, 6106.

heavily-tinted windows, identified themselves as police officers, and ordered the occupants to lower their windows. Emily Warner, Turner-Smith's girlfriend, opened the rear driver's-side door and got out. She told the police she had a gun in her bra. Police recovered the gun as well as a bag of fentanyl from the bra. Ms. Warner said that the gun and the fentanyl were Turner-Smith's and that he had taken them from the center console and put them into her bra when the police approached. The gun had an obliterated serial number. Laboratory inspection showed Turner-Smith's fingerprint on the gun. N.T., 2/18/20, at 58-73; N.T., 2/19/20, at 20-27, 89, 94-95, 142-43, 150-51.

Police also recovered $1,250 from Turner-Smith, as well as keys to the Mercedes and to a BMW. On Turner-Smith's cell phone, police later found a photograph of him holding a black and silver gun. Later, when Detective Murtaugh asked Turner-Smith if he wanted to give a statement, he said that he did not mean to get Ms. Warner "tied up in this." N.T., 2/18/20, at 88-93, 146-50.

Prior to trial, Turner-Smith moved to exclude the photograph from his phone of him holding a gun. He asserted that the Commonwealth had made late disclosure of the photograph in violation of the discovery rules, the photograph was not authenticated, it was offered to prove criminal propensity, and it was more prejudicial than probative. N.T., 2/18/20, at 2-5. Turner-Smith also sought to exclude, for lack of authentication, the SnapChat video, which he sent to another phone and which showed him with the Mercedes and a BMW. The trial court denied both motions.

The case proceeded to a jury trial. After the first day of trial, Turner-Smith learned that Ms. Warner had been investigated in 2017 for delivering drugs to a confidential informant ("CI") who later died. N.T., 2/19/20, at 8-10. He moved for a mistrial or, alternatively, an *in camera* hearing, to investigate the alleged prior sale. The trial court denied the motions for a mistrial or, alternatively, an *in camera* hearing and also precluded Turner-Smith from cross-examining Ms. Warner about the 2017 incident. Ms. Warner thereafter testified that the gun and drugs found in her bra belonged to Turner-Smith, and that he hid them there when police approached the car. She also testified that, on multiple occasions in the months before the encounter with police, she had seen Turner-Smith with the gun recovered from her bra. N.T., 2/19/20, at 24, 38-43.

At the conclusion of trial, the jury convicted Turner-Smith of the above-listed gun charges and acquitted him of possession with intent to deliver a controlled substance and possession of a controlled substance.[2] On June 8, 2020, the trial court sentenced him to an aggregate term of seventy-two to one-hundred eighty months of imprisonment. Turner-Smith filed a timely post-sentence motion, which was denied by operation of law when the trial court did not rule on it within 120 days. **See** Pa.R.Crim.P. 720(B)(3)(a). Turner-Smith filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

---

[2] **See** 35 P.S. § 780-113(a)(30), (16).

Turner-Smith presents the following issues for our review:

1.     Whether the trial court abused its discretion in considering evidence of fentanyl and indications of intent to deliver in fashioning [Turner-Smith's] sentence after Turner-Smith had been acquitted of all drug charges?

2.     Whether the evidence was []sufficient to support the convictions on persons not to possess firearms . . . possession of firearm with altered manufacturer's number . . . and firearms not to be carried without a license. . . because the Commonwealth failed to prove the element of possession beyond a reasonable doubt?  Additionally, whether the evidence was []sufficient to support the conviction for possession of firearm with altered manufacturer's number . . . on the ground that the Commonwealth failed to prove that [Turner-Smith] knowingly or recklessly disregarded the fact that the number was altered beyond a reasonable doubt?

3.     Whether the verdicts of guilt on persons not to possess firearms . . . possession of firearm with altered manufacturer's number . . . and firearms not to be carried without a license . . .  were against the weight of the evidence?

4.     Whether the trial court abused its discretion by denying [Turner-Smith's] motion for a mistrial following disclosure by the Commonwealth that a witness was investigated for a prior drug delivery?  Additionally, whether the trial court abused its discretion in precluding [Turner-Smith] from cross-examining the witness on this prior delivery?

5.     Whether the trial court abused its discretion by admitting a SnapChat video of [Turner-Smith] with a black Mercedes-Benz and a white BMW on the following grounds: the video was not properly authenticated under Pa.R.E. 901(a) and the probative value of the video was outweighed by the danger of unfair prejudice[?]

6.     Whether the trial court abused its discretion in admitting an undated photograph of [Turner-Smith] holding a firearm on the following grounds: the Commonwealth disclosed the photograph late, the photograph was not authenticated, the

photograph constituted improper propensity evidence, and the probative value of the photograph was outweighed by the danger of unfair prejudice?

Turner-Smith's Brief at 5-6 (reordered for clarity; unnecessary capitalization omitted).

Turner-Smith asserts in his first issue that the trial court abused its discretion at sentencing by improperly considering the drug charges of which he had been acquitted. A claim that a sentencing court considered an improper factor presents a challenge to the discretionary aspects of sentence. *See Commonwealth v. Tobin*, 89 A.3d 663, 667-69 (Pa. Super. 2014) (holding that the assertion that a sentencing court improperly considered *nolle prossed* charges constitutes a discretionary sentence claim). A discretionary aspects of sentence claim is not appealable as of right; the appellant must invoke this Court's jurisdiction by satisfying a four-part test. This Court must determine:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly presented at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's claim has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (internal citations and brackets omitted).

Based on our review, Turner-Smith failed to properly preserve this issue. He did not raise any objection at the sentencing hearing. Additionally,

although he asserted in his sentencing argument that the Commonwealth was unduly focusing on his "lifestyle" given his acquittal of the drug charges, *see* N.T. 6/8/20, at 19-21, he focused his mitigation argument on the assertions that he had merely possessed the gun, there was no proof of his involvement in obliterating the gun's serial number, and the jury acquitted him of the drug charges. *Id*., at 25-28. In his post-sentence motion, Turner-Smith argued that this was his first firearms conviction, that he had merely possessed the gun, and that his sentence was excessive. *See* Post-Sentence Motion, 6/14/20, at 4. Thus, neither at sentencing nor in his post-sentence motion did Turner-Smith assert that the trial court improperly referred to fentanyl or the drug charges of which he was acquitted or claim that the trial court considered an improper factor at sentencing. Because Turner-Smith did not preserve his appellate claim that the trial court improperly considered evidence of the drug charges at sentencing, he waived review of that discretionary sentence issue. *See* Pa.R.A.P. 302(a) (issues not raised in trial court are waived and cannot be raised for the first time on appeal). *See also Moury*, 992 A.2d at 170; *see also Commonwealth v. Cartrette*, 83 A.3d 1030, 1043 (Pa. Super. 2013) (holding that an unpreserved discretionary aspects of sentence claim is waived).[3]

---

[3] Even if Turner-Smith had preserved this issue, no relief would be due. A court does not commit reversible error by *entertaining* impermissible evidence; its sentence is only reversible if the court relied in whole or in part
*(Footnote Continued Next Page)*

In his second issue, Turner-Smith challenges the sufficiency of the evidence of his firearms convictions asserting: (1) the police did not find him in actual possession of the gun, and (2) merely touching the gun did not constitute possession. He also challenges the sufficiency of evidence of his possession of a firearm with an altered manufacturer's number conviction because there is no evidence that he knew or recklessly disregarded that the manufacturer's number had been altered.

When reviewing a sufficiency of the evidence claim, an appellate court determines whether the evidence, viewed in the light most favorable to the Commonwealth, and with all reasonable inferences therefrom, is sufficient to establish every element of the offense beyond a reasonable doubt. *See Commonwealth v. Haney*, 131 A.3d 24, 33 (Pa. 2015). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. *See Commonwealth v. Williams*, 255 A.3d 565, 578 (Pa. Super. 2021).

Possession is an element of each offense. *See* 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6110.2. To sustain a conviction of possession of a firearm with an altered manufacturer's number, the evidence must also

_____

on that evidence. *Commonwealth v. Smithton*, 631 A.2d 1053, 1057 (Pa. Super. 1993). Here, although the trial court referred at sentencing to the drug charges of which Turner-Smith was acquitted, it specifically stated that it disregarded those charges. *See, e.g.*, N.T., 6/8/20, 11-12 (trial court asserting that it is disregarding the drug charges); *cf. id*. at 24 (trial court stating that had Turner-Smith been convicted of the drug charges, he would have received a minimum sentence of more than ten years, rather than the six-year minimum sentence the trial court imposed).

establish that the accused possessed a firearm and acted intentionally, knowingly, or recklessly concerning the obliteration of the number. **See** 18 Pa.C.S.A. § 6110.2; **see also** 18 Pa.C.S.A. § 302(c) (providing the *mens rea* for criminal statutes that do not state the mental culpability required).

Based on our review, we conclude that direct evidence established Turner-Smith's actual possession of the firearm.[4] Ms. Warner's trial testimony that Turner-Smith took the gun from the console and hid it in her bra when police approached established that he was in actual possession of the gun, and that testimony was corroborated by the presence of his fingerprint on the gun. **See** N.T., 2/19/20, at 24, 145-46, 150-51. We therefore reject Turner-Smith's assertion that the evidence failed to prove his possession of the gun, an element of each of the offenses of which the jury convicted him. **See** 18 Pa.C.S.A. §§ 6501(a), 6110.2(a), 6106(a).[5]

We further conclude that Ms. Warner's testimony also established Turner-Smith's awareness that the gun had an obliterated serial number. She

_____

[4] We determine that sufficient evidence proved Turner-Smith's guilt, although we do so on a different basis than the trial court. **See Commonwealth v. Lehman**, 275 A.3d 513, 520 (Pa. Super. 2022) (holding that an appellate court may affirm a lower court's decision on any proper grounds without regard to the ground relied upon by the lower court).

[5] **Commonwealth v. Boatwright**, 453 A.2d 1058, 1059 (Pa. Super. 1982), which Turner-Smith cites, is inapposite. That case employed a constructive possession analysis because there was no evidence of the accused's actual possession of a gun. Here, Ms. Warner's testimony that Turner-Smith took the gun from the console and put it in her bra established his actual possession of the gun.

testified that she had seen Turner-Smith with the gun multiple times over several months, and that he took it from the car console and put it in her bra as he became aware of the approaching officers. *See* N.T., 2/19/20, 38-39, 42-43. That testimony showed that Turner-Smith acted knowingly, intentionally, or recklessly concerning the gun's obliterated serial number. *See Commonwealth v. Jones*, 172 A.3d 1139, 1145-46 (Pa. Super. 2017) (holding that the evidence was sufficient to allow the jury to infer knowledge of serial number's obliteration where the accused possessed a gun and attempted to conceal it from police detection). *See also Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (stating that it is a well-established principle of sufficiency review that a jury is free to believe all, part, or none of a witness's testimony). Thus, Turner-Smith's sufficiency issues merit no relief.

In his third issue, Turner-Smith asserts that the verdict was against the weight of the evidence because his acquittal of the drug charges indicates that the jury disbelieved Ms. Warner, at least in part. He asserts that Ms. Warner was unreliable because she was the subject of a pending theft charge, and that a verdict based on her testimony renders the evidence so unreliable as to shock the conscience.

A motion for a new trial is addressed to the trial court's discretion. *See Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013). A trial court should not grant a weight claim because of a mere conflict in testimony or

because it would have decided the case differently, it should only award a new trial on weight grounds where the verdict is so contrary to the evidence as to shock one's sense of justice. ***See id***. It is for the jury to resolve contradictory testimony and questions of credibility. ***See Commonwealth v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021).

We assess a trial court's ruling on a weight claim by examining the trial court's exercise of discretion; we do not make an independent determination of whether we believe the verdict is against the weight of the evidence. ***See Clay***, 64 A.3d at 1055. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence. ***See Commonwealth v. Landis***, --- A.3d ---, ---, 2022 WL 1681494 at *10 (Pa. Super., May 26, 2022).

The trial court reviewed the evidence and determined that the jury's verdict did not shock its conscience. ***See*** Opinion, 7/13/21, 9. Upon review, we discern no abuse of discretion in that ruling. The jury heard Ms. Warner's testimony and the trial court's instruction about her outstanding theft charge, and chose to credit her testimony. Turner-Smith has offered nothing to show that the trial court abused its discretion by declining to grant his weight claim.

We may not reweigh testimony the jury credited. ***See Delmonico***, 251 A.3d at 837-838.[6] Thus, Turner-Smith's weight of the evidence claim fails.

Turner-Smith's fourth, fifth, and sixth issues assert overlapping allegations of error in the trial court's denials of his requests for discovery sanctions and related evidentiary rulings. We review decisions involving discovery and evidentiary matters for an abuse of discretion. ***See Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa. Super. 2017); ***Commonwealth v. Wilson***, 273 A.3d 13, 19 (Pa. Super. 2022). An abuse of discretion is demonstrated only where the judgment is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." ***Wilson***, 273 A.3d at 19 (internal citation omitted). It is not enough to persuade an appellate court that it would have reached a different result; an appellant must show that the trial court abused its discretionary power. ***See Commonwealth v. Norton***, 201 A.3d 112, 120 (Pa. 2019).

In his fourth issue, Turner-Smith asserts that the trial court abused its discretion when it declined to grant a mistrial based on the Commonwealth's late disclosure of the fact that police previously investigated Ms. Warner for

---

[6] We also note that the jury's acquittal of Turner-Smith on drug charges cannot be interpreted as a specific finding in relation to some of the evidence, or a rejection of Ms. Warner's credibility as Turner-Smith contends. Inconsistent verdicts may be the result of mistake, compromise, lenity, or some other factor. ***See Commonwealth v. Miller***, 35 A.3d 1206, 1213 (Pa. 2012).

selling drugs to a CI in 2017. He argues that the allegation Ms. Warner previously sold drugs was relevant to establish the possibility of her guilt of the charges. He further asserts that he was prejudiced because the information that Ms. Warner allegedly sold drugs could have undermined the Commonwealth's theory of the case and cast doubt on Ms. Warner's testimony.

A mistrial is an extreme remedy that is not lightly dispensed. **Commonwealth v. Boczkowski**, 846 A.2d 75, 94 (Pa. 2004). It is granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from rendering a true verdict. **Commonwealth v. Sanchez**, 907 A.2d 477, 491 (Pa. 2006).

Pennsylvania Rule of Criminal Procedure 573 requires the Commonwealth to disclose "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]"). **See** Pa.R.Crim.P. 573(B)(1)(a). A defendant alleging a violation of mandatory discovery must "identify and explain the actual evidence at issue." **Santos**, 176 A.3d at 884. A trial court has broad discretion to select the remedy for a violation of the discovery rules. **See Commonwealth v. Simmons**, 662 A.2d 621, 634 (Pa. 1995). Those remedies include the grant of a continuance, preclusion of the admission of evidence, or any other order the court deems just under the

circumstances. *See* Pa.R.Crim.P. 573(E). An appellant seeking a new trial based on a discovery violation must demonstrate how a timelier disclosure would have affected his trial strategy or how he was otherwise prejudiced by the late disclosure. *See Commonwealth v. Brown*, 200 A.3d 986, 993 (Pa. Super. 2018).

Pennsylvania Rule of Evidence 404(b) prohibits the use of bad acts evidence to show propensity, but it permits the admission of that evidence for a proper evidentiary purpose if the probative value of the evidence outweighs its potential for unfair prejudice. *See Commonwealth v. Yale*, 249 A.3d 1001, 1015 (Pa. 2021). A defendant's proffer of evidence of a third party's prior crimes or bad acts to show that the third party, not he, committed the charged crimes is governed by less restrictive standards than those controlling the admission of an accused's prior bad acts. *Yale*, *id*. Under Pa.R.E. 401 to 403, the trial court must balance the relevance of the evidence of third-party crimes or bad acts against the danger of confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See id*. at 1022.

The trial court reviewed Turner-Smith's issue and concluded that Turner-Smith failed to establish prejudice from the late disclosure. *See* Supplemental Trial Court Opinion, 12/3/21, at 5. The trial court emphasized that the investigation into Ms. Warner's alleged 2017 drug sale did not result in her arrest or charges being filed. Accordingly, the trial court determined

that the late-disclosed information amounted to a mere allegation of Ms. Warner's prior criminal activity. *See id*.

We discern no abuse of discretion in the trial court's denial of Turner-Smith's motion for mistrial. Ms. Warner had been investigated four years earlier for an alleged drug sale; however, that alleged sale had not resulted in charges, and it remained only an unsupported allegation of a prior bad act. There was no basis for a finding that the Commonwealth made late disclosure of a material allegation. *See* Pa.R.Crim.P. 573(B)(1)(a). We discern no reversible error in the trial court's denial of a mistrial for the alleged discovery violation, where Turner-Smith proffered only that Ms. Warner may have been involved in a prior drug sale, and the said investigation did not result in criminal prosecution. Moreover, the jury acquitted Turner-Smith of the drug charges against him. *See Boczkowski*, 846 A.2d at 94; *Sanchez*, 907 A.2d at 491. Thus, no relief is due.[7]

---

[7] Turner-Smith also asserted that he was deprived of the opportunity to cross-examine Ms. Warner about the alleged sale. His argument concerning cross-examination consists of two sentences and lacks citation to relevant authority. In any event, his argument appears to depend on the applicability of *Yale* to this case. *Yale* holds that where a third party is charged or convicted of crimes similar to those with which the accused is charged, evidence of those charges may be admissible to negate the accused's guilt. *See Yale*, 249 A.3d at 1025. *Yale* is inapposite to this case. The mere allegation of misconduct that has not resulted in a conviction or criminal charges is not a proper basis for cross-examination. *See Commonwealth v. Long*, 483 A.2d 876, 878 (Pa. Super. 1984) (stating that witness may not be cross-examined about a mere allegation).

Turner-Smith asserts in his fifth issue that the trial court abused its discretion by admitting evidence of a SnapChat video of him with a Mercedes (the very one he was driving at the time of his arrest) and a BMW because the video was not authenticated and was more prejudicial than probative.

Authentication entails a relatively low burden of proof. *Commonwealth v. Murray*, 174 A.3d 1147, 1157 (Pa. Super. 2017). An item can be authenticated, *inter alia*, when there is testimony "that the item is what the proponent claims it is." Pa.R.E. 901(a). Digital evidence can be connected with a person circumstantially, including by identifying content. *See* Pa.R.E. 901(b)(11)(B)(i); *see also* Comment to Pa.R.E. 901(b)(11) (stating that digital evidence includes social media postings, and that its admissibility requires only evidence sufficient to support a finding of authorship).

Prior to trial, the trial court determined that the SnapChat video was authenticated because Turner-Smith sent it to another SnapChat account. *See* N.T., 2/18/20, 22-24. The trial court also rejected the claim that the video could have been more prejudicial than probative because the jury acquitted Turner-Smith of the drug charges against him. *See* Supplemental Trial Court Opinion, 12/3/21, 2-3.

We discern no error in the trial court's admission of the SnapChat video. The video was circumstantially authenticated by its content. *See* N.T. 2/18/20, at 22-24, Pa.R.E. 901(b)(11)(B)(i). We also observe that Turner-

Smith concedes on appeal that he sent the SnapChat video to another SnapChat account. *See* Turner-Smith's Brief at 52. Further, the video was probative because it showed Turner-Smith with the black Mercedes in which he was found at the time of this incident, and it explained how Detective Murtaugh knew that Turner-Smith was connected with the car. Finally, Turner-Smith's acquittal of all drug charges further undermines his claim that he suffered unfair prejudice from the admission of the video. Thus, Turner-Smith's claim fails.

Turner-Smith's final issue asserts that the trial court abused its discretion by admitting evidence of a photograph from his phone of him with a black and silver gun when the present charges concerned his possession of a black gun. He argues that the photograph was: (1) produced late in discovery and should have been excluded as a sanction for a discovery violation; (2) not authenticated with evidence of when and where it was taken and could have been altered; (3) improper propensity evidence; and (4) more prejudicial than probative.

As stated previously, a trial court has broad discretion to select the remedy for a violation of the discovery rules. *See Simmons*, 662 A.2d at 634. The trial court here determined that the appropriate remedy for the Commonwealth's delayed disclosure of the photograph was a continuance, and we discern no abuse of discretion in the trial court's ruling. Although this court does not condone the late discovery of the photograph in this case, any

unfair surprise to the defense was mitigated by the fact that the challenged photograph was found on Turner-Smith's own phone. Additionally, Turner-Smith was offered the option to seek a continuance to further investigate the photograph but elected not to do so. Thus, reversal is not warranted for the Commonwealth's late disclosure of the photograph. **See Simmons**, 662 A.2d at 634.

Turner-Smith's argument that the photograph of him with the black and silver gun was not properly authenticated also lacks merit. Turner-Smith concedes that his phone contained the challenged photograph. See Turner-Smith's Brief at 31. The concerns he raises about tampering or the location and time the photograph of him on his phone was taken are not persuasive, given that the photograph was found on his own phone. **See Commonwealth v. Williams**, 241 A.3d 1094, 1104-05 (Pa. Super. 2020) (holding that the trial court did not abuse its discretion in admitting evidence of a photograph from a phone the accused conceded was his and whose depiction he did not dispute).

Turner-Smith's next claim that the photograph was inadmissible as propensity evidence that was unduly prejudicial also fails. Prior bad acts evidence is admissible when offered for a proper evidentiary purpose. **See Yale**, 249 A.3d at 1015. One such purpose is where the evidence tends to prove that the accused previously had access to a weapon similar to the one

used in a charged crime. *See Commonwealth v. Christine*, 125 A.3d 394, 400 (Pa. 2015).

The trial court found that the photograph of Turner-Smith with the black and silver gun, similar in size, shape, and color to the one seized by police at the scene, was admissible because it tended to show his access to a gun similar to one found during the incident. *See* N.T., 2/18/20, at 5. Further, when the Commonwealth introduced evidence of the photograph, the trial court also gave a limiting instruction to the jury that it was the for the jury to determine if the photograph showed Turner-Smith with a gun, and that the photograph was, in any event, not proof that Turner-Smith had possessed the gun in this case either prior to, or during his interaction with police. *See* N.T., 2/18/20, 146-47. The trial court accordingly determined that the photograph of the black and silver gun was relevant, and that its instruction cured any possible unfair prejudice. *See* Trial Court Opinion, 7/13/21, 6-7.

We conclude that the trial court did not abuse its discretion by rejecting Turner-Smith's propensity challenge and his argument that the photograph's potential for unfair prejudice outweighed its probative value. An accused's prior possession of a weapon that could have been used in the charged crime is admissible, and any uncertainty about whether it is the same weapon is an

issue of weight for the jury. ***See Christine***, 125 A.3d at 400.[8]  Further, the trial court gave a limiting instruction to the jury that it could not infer Turner-Smith's guilt in this case from his possible prior possession of either a gun or the gun in this case.  ***See*** N.T., 2/18/20, 146-47.  We are therefore not persuaded that the trial court abused its discretion when it allowed the photograph in evidence.  ***See Christine***, 125 A.3d at 400; ***see also Wilson***, 273 A.3d at 20 (emphasizing that the trial court is not required to sanitize the trial to eliminate unpleasant but relevant facts).  Thus, Turner-Smith's challenge to the admission of the photograph merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/9/2022

---

[8] The plurality opinion in ***Commonwealth v. Holt***, 237 A.3d 514 (Pa. 2022), would require the Commonwealth to lay a foundation to justify the inference that the gun it offers as other acts evidence is the gun used in the charged crime.  ***See id***. at 537.  Even applying this standard from a case decided after Turner-Smith filed his brief, we would hold that evidence that the photograph of the gun was taken from Turner-Smith's phone was of a gun similar in size, shape, and color to the gun recovered on the scene, establishing a foundation for the photograph's admission into evidence.  ***See*** N.T., 2/18/20, at 5.